**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GERSON NUNEZ,** | : |
| **Plaintiff** | : |
| | : CIVIL NO. 3:CV-05-1763 |
| vs. | : |
| | : (JUDGE VANASKIE) |
| **WARDEN CAMERON LINDSAY,** | : |
| **Defendant** | : |

**M E M O R A N D U M**

**I.   Introduction.**

Gerson Nunez, a federal inmate housed at FPC-Canaan in Waymart, Pennsylvania, has filed a Bivens action alleging, inter alia, that prison officials have implemented a discriminatory local rule of photographing visitors prior to granting them visitation with inmates. These photographs are then stored in a computer file ostensibly for identification purposes. Allegedly in retaliation for questioning defendants about this practice, Nunez was removed from his job in the prison law library. Additionally, Plaintiff alleges that on multiple occasions prison officials improperly opened his legal mail outside his presence. (See Dkt. Entry 30, Amended Complaint.) After resolving Defendants' Motion for Summary Judgment, only two of Plaintiff's claims remain: (1) his alleged retaliatory firing from his prison job; and (2) the alleged improper opening of his incoming legal mail outside of his presence. (See Dkt. Entry 105).

Presently before me is Plaintiff's motion for injunctive relief concerning a variety of alleged retaliatory actions. (Dkt. Entry 45.) Although he did not file a brief in support of his motion, he did file a supporting Affidavit which I will construe as a supporting memorandum. (Dkt. Entry 46.) He claims that since filing this action prison officials have harassed him by subjecting his personal and legal property to repeated searches which have resulted in his loss of personal property, including a radio, shirt and towel. He also claims to have received two false incident reports for the possession of unauthorized items or contraband. (Id.) Nunez claims he suffers from anxiety after hearing "other inmates talking about Plaintiff and how afraid they are to get near or around [him] because they are afraid of being retaliated as Plaintiff. Inmates have been saying that Plaintiff is 'HOT' for filing suit against staff at FPC-Canaan." (Dkt. Entry 45.) He also asserts that Defendants continue to improperly open and read his legal mail outside his presence. (Id.) Although Nunez asks for "temporary and/or permanent injunctive relief," he does not specify what form of relief he desires the Court to grant.

For the following reasons, Nunez's Motion for Injunction will be denied.

**II.    Relevant Facts.**

Nunez claims that on February 12, 2006, Defendant Roberts refused to sign a form, created by Plaintiff, indicating that Nunez had given him three sealed pieces of legal mail. (Dkt. Entry 46, Nunez Affidavit.) Roberts indicated he would log the legal mail into the

log book but refused to show the completed log book to Nunez. (Id.)  The following day, Ms. Nicklin, the Camp Administrator, advised Nunez of a new legal mail/special mail collection practice where an officer, and not the Unit Team, would accept special mail between the hours of 11:00 a.m. and 11:30 a.m. each weekday. (Id.)  A memo was posted in the law library to advise the remainder of the inmate population of the change in procedure. (Id.)  Ms. Nicklins was not interested in hearing Nunez's version of the encounter he had with Roberts the day before. (Id.)

On February 15, 2006, at approximately 1:00 p.m., the Assistant Warden and a Lieutenant visited Nunez's new work site and spoke with his landscaping boss.  The Assistant Warden, the Lieutenant, and Nunez's Case Manager (Renda) then searched Nunez's locker, confiscating a radio. (Id.)  At approximately 2:30 p.m., Nunez was directed to report to the FPC-Camp where he was questioned about the radio.  Plaintiff claims he brought the radio with him from his prior place of confinement.  Although he did not receive an incident report, he was told that he would "be called within a week by a LT to discuss the matter of [his] radio. [He] was never called, so [he] gave up on [his] radio and bought a new one." (Id.)

The following day, when accessing his computerized personal legal materials maintained on the Education Department computer, Nunez claims someone left him a nasty message in his account which can only be accessed by the Education Department staff and himself. (Id.)  Nunez neither provides a copy of the note nor indicated that he advised FPC-

-3-

Canaan staff of this problem.

On February 23, 2003, Nunez claims he "was told" that an Officer who did not work at the camp that day had rummaged through his locker for 30 minutes without taking anything, but "read[ ] and look[ed] at [his] legal paper work." (Id.) Nunez claims his locker was searched again on March 7, 2006, for approximately 10 minutes and again "nothing was taken." (Id.) Nunez does not suggest who told him of these events, nor does he identify the officer who allegedly went through his legal materials, or what action he took to alert staff of this incident.

On March 15, 2006, a "shake-down" of FPC-Canaan occurred and a blue towel and white ribbed t-shirt was removed as unauthorized items found in Nunez's bunk area. A blue exercise mat, normally secured in the Recreation Department, was found under Plaintiff's mattress between the blanket and his sheet. Nunez received two incident reports as a result of theses items being found in his area. When Nunez appeared before the Unit Team Committee (Nicklin and Renda), he admitted that the towel and t-shirt were his, claiming that he brought them with him from another facility. Plaintiff denied possession of the blue mat. The Unit Team Committee denied Nunez's request to call his cellmate, who allegedly would have taken sole responsibility for the mat. At the conclusion of this meeting, the incident report involving the towel and the t-shirt were expunged from Nunez's record, but he was found guilty of possession of the blue mat for which he received the following punishment: loss

of commissary privileges for 30 days and 15 hours of extra duty.  (Id.)  Nunez's cellmate also received an incident report for possession of the same blue mat and received the same punishment as Nunez.

**III.     Discussion.**

To obtain injunctive relief, Plaintiff must establish the following: (1) he will likely suffer irreparable injury without an injunction; and (2) he is reasonably likely to succeed on the merits.  Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000).  "The court may not grant . . . injunctive relief without satisfying these requirements, regardless of what the equities seem to require."  Id.  "If these two threshold showings are made the District Court then considers, to the extent relevant," (3) whether the nonmoving party would suffer greater harm than Plaintiff if the injunction were granted; and (4) "whether granting relief would serve the public interest."  Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 144, 157 (3d Cir. 2002).  The burden lies with the moving party to establish every element in its favor, or the grant of a preliminary injunction is inappropriate.  P.C. Yonkers Inc. v. Celebrations, 428 F.3d. 504, 508 (3d Cir. 2005).

Keeping in mind the limited nature of the two remaining claims in this action, I will deny Nunez's request for injunctive relief because he cannot show the likelihood of irreparable injury.  See Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989).  Nunez does not claim he was harmed as a result of Roberts' refusal to sign his form indicating that he had received

-5-

Nunez's legal mail or his failure to show Plaintiff the completed log book entries reflecting his receipt of Nunez's legal/special mail.  Likewise, his unsubstantiated allegations, admittedly based on hearsay, that an unidentified officer ransacked his locker to read his legal materials, are insufficient to merit the injunctive relief.

As for his claim that his radio was inappropriately confiscated, Nunez states that he "gave up" on this issue without pursuing the matter with Camp staff.  This event, in itself, does not demonstrate any malice or retaliation by Defendants against Nunez as a result of his initiation of this action.

Finally, with respect to his claim that he received two incident reports as a result of a "shake-down" at the camp, Nunez does not suggest how these events were "retaliatory" or that his area was singled out for search.  Furthermore, Nunez admits that the incident report for the unauthorized clothing was expunged.  As for the blue exercise mat, Nunez does not dispute that it was found under his mattress.

## IV.    Conclusion.

In sum, based on the record before me, Plaintiff has failed to suggest how his receipt of either incident report demonstrates retaliation or threatens the infliction of irreparable harm.  Nor does Plaintiff's claim that a retaliatory motive should be presumed afford a proper basis for extraordinary injunctive relief.  This Court must exercise its authority with caution when dealing with the volatile atmosphere of a prison.  The considerable leeway afforded

prison officials demands that much more be shown to warrant issuance of an injunction that precludes their exercise of discretion in responding to the demands of daily prison life. Accordingly, Plaintiff's Motion for Injunction (Dkt. Entry 45) will be denied.

                                        **s/ Thomas I. Vanaskie**
                                        Thomas I. Vanaskie
                                        United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GERSON NUNEZ,** : | |
| : | |
| **Plaintiff** : | |
| : | **CIVIL NO. 3:CV-05-1763** |
| **vs.** : | |
| : | **(JUDGE VANASKIE)** |
| **WARDEN CAMERON LINDSAY,** : | |
| : | |
| **Defendant** : | |

**O R D E R**

**NOW**, **this 12th DAY of NOVEMBER**, **2006**, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT** Plaintiff's Motion for Injunction (Dkt. Entry 45) is **DENIED**.

                                                **s/ Thomas I. Vanaskie**
                                                Thomas I. Vanaskie
                                                United States District Judge