IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERSON NUNEZ, | : |
| | : |
| Plaintiff | : |
| | : CIVIL NO. 3:CV-05-1763 |
| vs. | : |
| | : (JUDGE VANASKIE) |
| MARC RENDA, | : |
| | : |
| Defendant | : |

M E M O R A N D U M

I.   Introduction

Former federal inmate Gerson Nunez's[1] sole remaining claims in this Bivens action[2] concern interference with legal mail and retaliation. The sole remaining defendant is Marc Renda. At all times relevant to this action Nunez was housed at the Canaan Federal Prison Camp ("FPC-Canaan"), in Waymart, Pennsylvania. Nunez claims Renda sanctioned the opening of his legal mail outside his presence and removed him from his a prison law clerk job in retaliation for his filing of an institutional grievance about the legal mail matter.

---

[1] Nunez was released from the custody of the Bureau of Prisons on May 15, 2008, and presently resides in Anchorage, Alaska. (Dkt. Entry 189.)

[2] A "Bivens action" is a commonly used phrase for describing a judicially created remedy allowing individuals to seek damages for unconstitutional conduct by federal officials. This constitutional tort theory was set out in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

Presently pending before the Court is Renda's motion for summary judgment. (Dkt. Entry 172.) For the reasons that follow, Renda's motion will be granted insofar as Nunez seeks to recover damages from him in his official capacity, and granted as to Nunez's claim concerning opening of legal mail, but denied with respect to the retaliation claim.

II.     Procedural History

On August 30, 2005, Nunez filed a "Motion for Preliminary Injunction Relief" (Dkt. Entry 1), alleging that he was removed from his law library job in retaliation for his use of the prison's grievance system to challenge the institution's practice of photographing inmate visitors and the opening of his legal mail outside his presence. (Id.) Nunez acknowledged in this document that he had not yet exhausted administrative remedies relevant to the claims raised at the time of filing. (Id.) Given Nunez's pro se status, the Court construed the submission as a Complaint and directed service on the named Defendants. (See Dkt. Entry 11.) Plaintiff then sought allowance to file an Amended Complaint, citing that "Plaintiff filed a motion for injunctive relief while pending resolution of administrative remedies to avoid retaliation or intimidation by Defendants while remedies were pending. Administrative remedies are exhausted and to avoid dismissal of Plaintiff's complaint for failure to exhaust remedies this court should grant this motion to amend." (Dkt. Entry 18.) The Court granted Nunez's motion pursuant to Federal Rules of Civil Procedure 15(a). (Dkt. Entry 20.) Nunez's Amended Complaint was filed on February 14, 2006, raising the identical claims presented in

his "Motion for Preliminary Injunction," but adding additional parties. (Dkt. Entry 30.) Pursuant to the authority conferred by 28 U.S.C. § 1915(e)(2)(B)(ii), the Court dismissed the Bureau of Prisons ("BOP") and FPC-Canaan as defendants, and directed service on the following defendants: Broton, Dodrill, Mecca, Nicklin, Renda, Roberts and Watts. (Dkt. Entry 41.)

On June 8, 2006, in lieu of an Answer, defendants filed a motion for summary judgment based on Nunez's alleged failure to exhaust his available administrative remedies. (Dkt. Entry 63.) On November 8, 2006, the Court granted in part, and denied in part, defendants' motion. (Dkt. Entry 105.) Following the resolution of the summary judgment motion, the following claims remained: (1) Nunez's alleged retaliatory discharge from his prison job; and (2) the alleged improper opening of his legal mail outside his presence. (Id.)

On February 13, 2008, Defendants Watts, Dodrill, Lindsay, Roberts, Nicklin, Broton and Mecca filed a Motion to Dismiss seeking the dismissal of Nunez's claim that his legal mail was improperly opened outside his presence. (Dkt. Entry 162.) On August 11, 2008, the Court granted defendants' motion due to Nunez's failure to properly exhaust administrative remedies prior to filing his amended complaint. (See Dkt. Entry 188.)

On March 10, 2008, Defendant Renda moved for summary judgment. (Dkt. Entry 172.) A supporting brief, exhibits, and statement of undisputed facts were also filed. Renda claims entitlement to summary judgment on the following grounds: (1) he had no personal involvement in Nunez's claim regarding the alleged improper opening of his legal

mail; (2) sovereign immunity; and (3) Nunez's failure to establish a prima facie claim of retaliation. Nunez then filed an opposition brief and counter statement of material facts. Defendant filed a reply brief on May 14, 2008. Without seeking permission of the Court, Nunez filed a sur reply brief on June 9, 2008. The matter is ripe for decision.

III.    Factual Background

At all time relevant to the Amended Complaint, Defendant Marc Renda served as a Case Manager at FPC-Canaan. (Dkt. Entry 178, Defendant's Statement of Material Facts ("DSMF") at ¶ 2.) Renda's duties included responding to "Inmate Request to Staff Member" forms, and, in the absence of the Corrections Counselor, making inmate work assignments. Id. at ¶¶ 5-6.)

Nunez arrived at FPC-Canaan on July 20, 2005, and shortly thereafter was assigned to work in the institution's Education Department, which includes a satellite law library. (Id. at ¶¶ 9, 12-13.) On August 16, 2005, Nunez submitted an Inmate Request to Staff form complaining that his legal mail was opened outside his presence. (DSMF at ¶ 16.) On November 26, 2005, Nunez filed an Attempt at Informal Resolution form, requesting that his legal mail be opened in his presence. (DSMF at ¶ 19.)[3]

On August 22, 2005, Nunez submitted an Inmate Request to Staff form,

---

[3] In his deposition testimony, Nunez defines Renda's role in this claim. Nunez alleges that Renda violated his constitutional rights with respect to his legal mail when he signed the informal resolution form when Nunez grieved the event. (Id. at ¶¶ 20-21.)

requesting a copy of FPC-Canaan's policy of taking pictures of inmate family and friends prior to entering the institution's visiting room. (Id. at ¶ 22.) Renda read Nunez's request the following day. (Id. at ¶ 26.) Renda then attempted to informally resolve the matter by speaking directly to Nunez and explaining the institution's visitor photograph policy to him. (Id. at ¶ 28.) Renda claims that when he approached Nunez in the law library, he observed Plaintiff working on a typewriter and appeared to be working on personal correspondence during his scheduled work hours. As an Education Department Orderly, the Plaintiff was not allowed to work on personal projects during his regularly scheduled work hours. In fact, Renda claims Nunez was previously warned by Renda and others not to perform personal work during his hours of employment. (Dkt. Entry 177-3, Exhibits to Defendant's Summary Judgment Brief, Exh. A, Renda Decl. at ¶ 15.)

Nunez disputes that he was employed as an Education Department "Orderly." He contends he was hired as a law library clerk. (Dkt. Entry 181, Plaintiff's Opposition to Defendant's Statement of Material Facts ("PSMF") at ¶ 30.) Likewise, Nunez adamantly denies ever working on any personal projects or personal matters during his regularly scheduled work hours in the law library. (Id. at ¶¶ 29 - 30.) Finally, Nunez denies that he was warned about not doing personal work during his regularly scheduled work hours. (Id. at ¶ 31.)

On August 23, 2005, Renda removed Nunez from his Education Department job, reassigning him to the institution's landscape work detail. Renda made the switch

because he believed Nunez continued to conduct personal business during his regular hours of employment in the Education department.  (Dkt. Entry 177-3, Exhibits to Defendant's Summary Judgment Brief, Exh. A, Renda Decl. at ¶18 and ¶ 23.)  Renda denies reassigning Nunez to the landscape crew in retaliation for filing grievances.  (Id. at ¶ 19.)  Instead, Renda thought the change in work assignment would deter him from repeating the prohibited activity.  (Id. at ¶ 21.)

On August 25, 2005, Renda's Education Department job supervisor completed Nunez's job performance evaluation.  (See Dkt. Entry 30, Amended Complaint, Attachment A, Nunez's Job Performance Evaluation dated August 25, 2005.)  Nunez's "education" position was ranked as a "Performance Pay-Grade Class" level 4 job.  (Id.)  Grade 4 is the lowest and most common pay grade, applicable to approximately 55 % of the institution's inmate work assignments.  (Dkt. Entry 177-3, Defendant's Exhibits.)  Nunez received an extra $10.00 in "Bonus Pay" as a result of the performance review.  (See Dkt. Entry 30, Nunez's Job Performance Evaluation dated August 25, 2005.)

IV.   Standard of Review

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if proof of its existence

or nonexistence might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to nonmoving party. P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 852 (3d Cir. 2006). The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 256-57. The non-moving party "may not rest upon the mere allegations or denials of the . . . pleading," but "must set forth specific facts showing that there is a genuine issue for trial." Saldana v. Kmart Corp., 260 F.3d 228, 231 - 232 (3d Cir. 2001). Allegations made without evidentiary support may be disregarded. Jones v. UPS, 214 F.3d 402, 407 (3d Cir. 2000).

V. Discussion

    A. Renda's Alleged Involvement in the Opening of Nunez's Legal Mail Outside of his Presence

As recited more fully in this Court's Order of August 11, 2008, Dkt. Entry 188,

Nunez's claim of Renda's alleged interference with his legal mail is subject to dismissal due to Nunez's failure to exhaust available administrative remedies.  Thus, it is irrelevant whether Renda was involved in such improper activities as Nunez's legal mail claim is not viable due to his failure to await the completion of the BOP's administrative remedy process prior to filing his complaint in this Court.  Thus, Renda is entitled to summary judgment on this claim.

B. Sovereign Immunity

Renda is sued in his personal and official capacities.  Renda claims that the Bivens claim against him in his official capacity for monetary damages is barred by the doctrine of sovereign immunity. While a plaintiff may assert a Bivens claim against individual federal officials acting in their individual capacities, they may not sue to recover monetary damages against federal officials in their official capacities because such claims are, in essence, suits against the federal government, which is entitled to sovereign immunity.  See Lewal v. Ali, No. 07-2865, 2008 WL 3286697, at *2 (3d Cir. Aug. 11, 2008).  Therefore, Nunez's claim for monetary damages against Renda in his official capacity is barred.

C. Alleged Retaliation by Renda

The First Amendment to the United States Constitution protects an individual's right "to petition the Government for redress of grievances." U.S. Const. am. 1.  The amendment, however, provides protection beyond proscribing the abridgment of an individual's right to petition the government; it also prohibits the government from retaliating

against an individual who actually exercise their constitutional rights.  See, e.g., Rankin v. McPherson, 483 U.S. 378, 383-84, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987).  Even government actions that do not violaton the Constitution can amount to a constitutional tort if substantially motivated to punish an individual for exercising a constitutional right.  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000).

Proof of a prima facie retaliation claim requires the plaintiff to demonstrate:  (1) he was engaged in a constitutionally protected activity; (2) he suffered an adverse action at the hands of a state actor sufficient to deter a person of ordinary firmness from exercising constitutional rights; and (3) the protected activity was a substantial or motivating factor in the prison official's decision to take adverse action against him.  Brown v. Pennsylvania Dept. of Corrections, 271 Fed. Appx. 280, 282 (3d Cir. 2008)(citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)).

Once Plaintiff has made a prima facie case that his exercise of a constitutionally protected right was a substantial or motivating factor in the challenged action, the burden shifts to the defendant to prove by a preponderance of the evidence that they "would have [taken the same action] absent the protected conduct for reasons reasonably related to penological interest."  Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002) (internal quotation and citation omitted).  When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference,

-9-

particularly where prison security is concerned.  Rauser, 241 F.3d at 334.

Nunez alleges Renda retaliated against him for exercising his constitutionally protected right to file grievances when he reassigned him from his job with the Education department to the landscaping detail.  Defendant Renda states he transferred Nunez to the landscaping crew after he repeatedly disregarded warnings not to do personal projects while working in the law library.  Renda acknowledges, however, that there is a genuine issue of fact as to whether there was a legitimate penological purpose for reassigning Nunez from the educational department to the landscaping crew.  See Brief in Supp. of Mot. for Summary Judgment, Dkt. Entry 177, at 13 n.3.

It is clear that the filing of prison grievances constitutes protected conduct that falls within the ambit of the First Amendment.  See, e.g., Mitchell, 318 F.3d at 530; Allah, 229 F.3d at 224-25.  Renda does not dispute, nor can it be argued, that Nunez was engaged in protected conduct, the filing of administrative grievances.  Furthermore, given the unusually suggestive temporal proximity between Renda's receipt and reading of Nunez's grievance contesting the institution's practice of photographing inmate visitors and Nunez's job reassignment (one day), there is factual dispute on the existence of a causal connection between Nunez's engagement in a protected activity and the alleged retaliatory act.  See Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

Renda, however, contends that the job reassignment does not constitute

sufficiently "adverse action" to sustain a retaliation claim.  Renda argues that "[n]othing about the job reassignment would have prevented an individual of ordinary firmness from exercising his First Amendment rights."  (Defendant's Brief, Dkt. Entry 177, at 12.)  Renda also claims that "Nunez's job duties did not change dramatically, he did not see a loss in pay, he was not demoted, etc." as a result of his job reassignment.  No evidence, however, was offered by Renda to confirm these generalized assertions.

Although an inmate does not have a constitutionally protected interest in a prison job assignment,  James vs. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989), Defendant acknowledges that there is case authority denying summary judgment on a prisoner's retaliation claim based upon a job reassignment following exercise of a First Amendment right.  See Floyd v. Dugal, No. Civ. A. 99-1616, 2003 WL 23101802, at *7 (E.D. Pa. Dec. 16, 2003)( a reasonable fact finder could conclude that a job reassignment with a lower pay and less interesting environment could deter a prisoner of ordinary firmness from exercising First Amendment rights).   In the present matter, there is no information as to whether the transfer of Nunez from one assignment to another affected his pay or ability to earn bonuses.  Nunez has provided information that the landscaping work was more demanding physically and a less favorable  working environment.  Under these circumstances, there is a genuine dispute of material fact as to whether Renda took "adverse action" against Nunez when he removed him

from the law library position.[4]  That is, it cannot be concluded as a matter of law that the reassignment would not deter a prisoner of ordinary firmness from filing a grievance. Therefore, Renda's motion for summary judgment on Nunez's retaliation claim will be denied.

      An appropriate Order follows.

                                       s/ Thomas I. Vanaskie
                                       Thomas I. Vanaskie
                                       United States District Judge

---

[4] Contrary to Renda's argument, Shockley v. Hosterman, No. 07-216-SLR, 2007 WL 1810480, at *3 (D. Del. June 22, 2007), did not hold that a prison work reassignment could not constitute an adverse action.  Instead, the court held that there were a number of reasons why the plaintiff had not presented a viable retaliation claim, including the fact that the plaintiff had not named as defendants any of the decision-makers.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERSON NUNEZ, | : |
| | : |
| Plaintiff | : |
| | : CIVIL NO. 3:CV-05-1763 |
| vs. | : |
| | : (JUDGE VANASKIE) |
| MARC RENDA, | : |
| | : |
| Defendant | : |

O R D E R

NOW, this 3rd day of September 2008, for the reasons set forth in the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1. Defendant Renda's Motion for Summary Judgment (Dkt. Entry 172) is granted as to the legal mail claim, but denied as to the retaliation claim.

2. A trial date in this matter will be set by further order of the Court.

                                                          s/ Thomas I. Vanaskie
                                                          Thomas I. Vanaskie
                                                          United States District Judge